Good morning, Your Honors. May it please the Court. Obviously, there's a lot of overlap here with the legal arguments, so I hoped to just maybe put my gloss on a couple of things the panel put out. I think one of the first questions was what would be the proper sequence? And I think the proper sequence, if there is Article III standing at this pleading stage, which I think there is in our case as well, is to open it up to general discovery and, not relevant in this case, but also to a motion to suppress, because by the time you get to that next stage of summary judgment, at summary judgment, you're going to have to decide, one, what evidence is admissible, and two, you're going to have to have allowed both sides to have completed discovery to be able to put forward whatever evidence they need at summary judgment. So I hope that more directly answers the question of what I think the sequence should be in these litigations. Well, I mean, I don't know that it does, because it seems that there's still a question of, you know, if you get to discovery, what is that going to consist of, and what discretion does the district court have in sort of phasing the discovery in any particular way? And my — where I was going with your colleague was, why couldn't the district court have said, I want to have discovery focused on these ownership issues first, before we get to the motion to suppress? Because I'm reading these interrogatory responses, and they raise some serious questions about how your clients happened to have all this cash on hand at the time they were stopped. Right. Well, I'm glad you asked that, because I think what happens is, because there is Article III standing, you've now moved into the merits of the case. And so, this kind of touches actually on what Your Honor and what Your Honor asked about, and I think one of his — why loaded on the front end is what Judge — Your Honor, Judge Lee said, and I believe Judge Thunheim said, what happens when the standing and the merits merge? So, there's two answers to that question. There's actually a body of case law in this circuit that says, when standing and the merits merge, Article III standing should be saved for trial. Second to that is, I would direct the Court's attention to the Seventh Circuit case of the United States v. 239,400. That's a forfeiture case, and talking about, if you load it at the front end, and you say that, hey, we got to open it up to this disputed ownership, which is what I would call the merits of the case, if you open to that — open that up and let — do it unilaterally at the beginning of the — at the beginning of these forfeiture cases, then what's happened is you've flipped that burden of CAFRA that's saying it's the government's burden and not the — and it shouldn't be the claimant's burden. You flipped it back to the merits before he can do anything. And what the Seventh Circuit says that I think is particularly helpful to this question is, they said, if you load it up on the front end, it's only going to be through the grace of God that a claimant would ever get discovery, because then in every single forfeiture case, you're going to have the government saying, I dispute standing, and so that means the claimant doesn't get any pretrial motions, and he never gets discovery. And so that's a patent unfairness that I think CAFRA was trying to correct. And when we get to that place where we're taking — we're saying that the merits is Article III standing, that's when we flip it back to that unconstitutional burden of the claimant having to prove his money is not subject to forfeiture before the government has to do anything. Why shouldn't we view Rule G-6 as sort of a compromise? Government can serve special interrogatories that look into standing, and maybe it bleeds into the merits, but they're just interrogatories. They can't serve written discovery. Written discovery can be a lot more burdensome than just answering some questions. So maybe for regular discovery, the government can propound many, many written discovery requests, requests for documents. That's very burdensome, but at this stage, you know, you're just answering some questions, interrogatories. Because at this stage, those questions are not relevant to Article III standing. And so I think that's why this Court should view it that way. You've got to view it, does he have Article III — does she have Article III standing at this stage? The answer, I think, is yes. Move on. Move on to merits discovery. Move on to motions to suppress, whatever else is in the case. But the rule says that the government can issue special interrogatories regarding the relationship to the defendant property at any time. Doesn't that suggest that they can inquire further after the initial verified claim is made? Absolutely. Absolutely. But it can't — what my position is, is that you can't do that at a time when you're saying that claimant can't have his own discovery, and claimant can't do her own motions and get answers to her own questions. That's my position, is you can do that because — and the reason I would say that is, I think the rules of civil procedure always say that discovery has to be sort of what discovery occurs. The limit and the frequency of discovery, what occurs, always has to be proportionate to what's important in the needs and the relevance of the discovery for the issues at hand. So that would be my response to that. And one last thing I wanted to squeeze in, because I regretfully — I regret that I didn't get it in the briefs, was that if you look at the Advisory Committee note to Rule G8c, which is the section that governs motion to strike, it says, paragraph C governs the procedure for determining whether a claimant has standing, period. It does not address the principles that govern claim standing, end quote. And so, in other words, what that means to me is that Rule G8 — Rule G sets out procedures, but it doesn't create its own substantive standing requirements. And so that's what I'm just ending on. I think it's very important to keep Article III standing separate from these statutory requirements, and otherwise you get into this position, as I said, where we flipped the burden back onto the claimants when essentially Congress had determined that was unconstitutional. Great. Thank you. Rule 8a is motion to suppress. Rule G8a is motion to suppress. Rule 8 — G8b is the Rule G8c is the motion to strike, claim, or answer. It's all part of the same section, subsection. Number two, neither 133420 or the Coon Creek Road property, 17 Coon Creek Road property, address — it discusses Supplemental G6 and its purposes. But in both cases, it was not a Supplemental G6 motion. It was a Supplemental Gc5 motion under the 8 procedure for standing in Article III. That makes a big difference because G5 clearly addresses standing. We did not because Supplemental G6 was not answered sufficiently. Proper sequence. Your Honors, Rule 37 tells the judge can sequence the order in which it does, and therefore, she did to control her docket and schedule. It was a motion for standing. As to Supplemental Advisory G, there's a lot of comments in there, and if you read it carefully, that is a procedure in order to be able to determine whether or not there is Article III and statutory standing. So my answer is, of course, the procedure is we can do a Supplemental G6 interrogatories that 8, we can use any combination of that to then, under the procedure, litigate the issue. We never got to that part because it was a sanction. Let me ask you a slightly different question here. The Supreme Court issued a civil forfeiture opinion last week. Culley v. Marshall, I think it was a challenge to an Alabama statute. Yes. Do they have any gloss on the law that would be helpful for us or not? I have read that. Whitlock came out a week or two before that, and then Marshall. Marshall, in essence, the majority opinion was in our favor. The dissenting position of Alito said we might be relitigating that issue because he expanded on judge, the one who did the previous opinion, and that we might be litigating that issue again. And it was on whether civil forfeitures is constitutional, period. My simple comment on that is when the United States was created under the Constitution, they rejected criminal forfeitures and they only established civil forfeitures. And until the income tax, the tariff and smuggling, and those were the income. My opinion after 35 years is we won that when, oh, come on. I can't think of the judge justice argued it last time after, I think we said 20 years of litigation, we prevailed. I think we will prevail again, even with Judge Alito's additional language. Now the makeup of the but we'll have to wait and see. But does it relate to this one? No, it doesn't. In the sense of what we're discussing. Turning more to the other issue, the Seventh Circuit case that they decided their footnote is, I believe, misinterpreted. It did not address G6. It addressed G5. It went on and ruled against the government for G5. However, it gave an opinion that was advisory on G6. And it did say, oh, by the way, even if they did G6 properly, we still wouldn't have granted it. But that was not the litigation. That was not the briefing. That was not the schedule. So I propose to you that that is frivolous, not frivolous, it is not binding on the Seventh Circuit or your district court or any other, because it wasn't directly the issue provided. If you carefully look at the cases in that footnote, you're going to see the majority of them are pre-Cafferden opinions that are not addressing supplemental G that came into existence in 2006. And because of that, all that other citations to the other circuits and that, there are two circuits, Seventh and Eighth, that are different than the Ninth Circuit line of cases. But those are not binding and this court should not follow it. This court should continue to follow the Ninth Circuit case law and holdings, especially the explanation of what G6 is and why we achieved that. Again, she admitted to be a Bailey. She admitted to and then said she was owner. She then said, oh, by the way, on this truck, if I'm the owner of the truck, do I have to claim the money? After you said yes and the officer said, you don't have to. And she said, no, then I don't claim it. Yet, when she files her claim, judicially, she says, I own it. She even discussed how many trips of drugs she took to Michigan from California. She discussed how many, how much she got paid more for transporting drugs and cash. The cash coming back from Michigan was what? Going to buy more drugs in California. And she would be paid when she delivered it. Thank you for your time, Your Honors. Thank you. If you want one minute, Ken. Thank you. The case has been submitted. Again, thanks to all the counsel for the helpful argument.
judges: LEE, BRESS, Tunheim